(91 South. 546)

No. 24544.

GUDERIAN v. STERLING SUGAR & RY. CO., Limited.

(March 27, 1922. Rehearing Denied April 17, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Master and servant ⬅398 — Prescription against claim for compensation held not to run until employee's loss of eye several months after injury.**

Where an employee was struck a blow over the eye, which, unknown to him, injured the optic nerve, but it gave him no concern, and did not perceptibly affect his eyesight, and, when the first symptoms of injury to the eye appeared, he was assured by his physician that it was due to other causes, and he did not know that his eyesight was failing for several months after the accident, the prescription of one year prescribed by Employers' Liability Act, § 31, did not run until he lost his eye, as his cause of action did not arise until that time.

2. **Master and servant ⬅373 — Injury to foreman assaulted by discharged workman held compensable as "arising out of and in course of employment."**

Where a foreman reprimanded and discharged an employee, and was assaulted and injured by the employee as a result of the discharge, and while he, pursuant to his duty, was settling with the employee, the injury arose out of and in the course of the employment, so as to be compensable under the Employers' Liability Act, though he was not without fault in that he charged the employee with lying, and resisted the assault by striking the discharged employee with a broom.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

3. **Master and servant ⬅385 (11¼) — Compensation awarded for loss of only eye as for total disability.**

Under Act No. 38 of 1918, § 8, classifying the loss of both eyes as a total disability within the Employers' Liability Act, one losing his only eye, and unable to do remunerative work of any reasonable character, will be awarded compensation as for permanent total disability.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Percy Saint, Judge.

Suit under the Employers' Liability Act by August Guderian against the Sterling Sugar & Railway Company, Limited, for compensation for injuries. Compensation was awarded, and the employer appeals. Affirmed.

P. M. Milner and Milling, Godchaux, Saal & Milling, all of New Orleans, for appellant.

Foster & Boatner, of Franklin, for appellee.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

OVERTON, J. Plaintiff instituted this suit under the Employers' Liability Act (Act No. 20 of 1914) to recover judgment against defendant for $16.75 a week, beginning April 23, 1919. for a period of 400 weeks, for injury which he alleges he received from an accident, which he contends occurred in the course of his employment and arose out of it.

The injury consists in the loss of an eye. This loss has rendered him totally blind, for the reason that some years before he was so unfortunate as to have lost the other. He therefore alleges that he is totally and permanently incapacitated to work, and sues for compensation accordingly.

The defense is the prescription of one year, the plea that the accident did not arise out of and in the course of the employment, and, in the event it did, then that the incapacity is not total, but only partial.

[1] The plea of prescription of one year is the first question that calls for attention, for if it should be well founded it would be needless to determine the remaining questions.

The facts pertinent to that plea are as follows: Plaintiff, who was the foreman of a number of laborers in defendant's employ, was struck by one of them, named Porter, over the eye, in a difficulty immediately following the latter's discharge. The blow caused a gash over the eye, which, while it required slight medical attention, gave plaintiff no concern, and did not occasion him any

loss of time from his work. This was on January 9, 1919. In the early part of April, following, plaintiff observed dark spots before his eye. This at once alarmed him, and he immediately consulted a local physician, who informed him that the condition mentioned was due to a probable derangement of the kidneys or indigestion. He then returned to his work, but about April 23d he noticed that his eyesight was failing, and immediately consulted the same physician, who advised him to consult at once a specialist in New Orleans. He acted on this advice, for on April 29th he was under treatment in the Touro Infirmary.

The evidence discloses that the blow over the left eye caused the detachment of the retina on the temporal side, and that at some time after April 23d, perhaps in the early part of May, 1919, plaintiff as a result lost his left eye completely, and, for the reason above stated, became totally blind.

This suit was instituted on April 22, 1920. Hence over a year elapsed between the blow and the institution of this suit, whereas less than a year intervened between the loss of the eye and the filing of the suit.

Defendant contends that prescription began to run from the time the blow was struck, whereas plaintiff's contention is that it commenced at the time of the loss of the eye. The Employers' Liability Act contains the following provision relative to prescription:

"That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the injury or death the parties shall have agreed upon the payments to be made under this act, or unless within one year after the injury proceedings have been begun as provided in sections 17 and 18 of this act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time [of] making the last payment." Section 31 of Act No. 20 of 1914.

Undoubtedly, the blow injured the optic nerve at the time it was given, but plaintiff did not know that, and had no means of ascertaining it. His eyesight was not perceptibly affected. He continued his work, stopping only long enough to have the wound on the forehead dressed. He had no cause of action at that time under the Employers' Liability Act. His cause of action was in process of development, but without knowledge of this fact on his part, or means of knowledge. The first symptom that arose suggesting the possibility that his eye was injured was not sufficient to excite the slightest alarm in his physician, whose opinion dissipated plaintiff's fears. He had no knowledge of even what might happen until April 23, 1919, which was within one year prior to this suit, unless the symptom, above mentioned be deemed knowledge, but we think it should not.

Plaintiff's cause of action did not arise until he lost his eye. It is self-evident that one cannot sue until his cause of action arises. Concerning the prescription of one year applicable to offenses and quasi offenses, prescribed by article 3536 of the Civil Code, this court, in South Arkansas Lumber Co. v. Tremont Lumber Co., 146 La. 61, 83 South. 378, said:

"A person cannot bring suit until his cause of action has accrued, and until a cause of action has accrued, prescription cannot run against it. Jones v. T. & P. R. R. Co., 125 La. 542, 51 South. 582, 136 Am. St. Rep. 339."

While the above was said in relation to another, though a kindred prescription, yet the fundamental principle involved is equally as applicable here as it was there. To the same effect as the South Arkansas Lumber Co. Case is the case of Rady v. Fire Insurance Patrol, 126 La. 273, 52 South. 491, 139 Am. St. Rep. 511. The cases of Griffen v. Drainage Commission, 110 La. 841, 34 South. 799, and Egan v. Hotel Grunewald, 134 La. 740, 64 South. 698, cited by defendant, do not lead to a different conclusion. They state the rule where a single act causes continuing and progressive damage. Even

those cases recognize an exception to the rule they announce, for it is there stated, in effect, that prescription is suspended if it be made to appear that there was good legal reason for not bringing the action earlier, and therefore, if anything, they support the view taken in this opinion. We therefore overrule the plea of prescription.

[2] In determining the case on its merits, it will be necessary to state how the difficulty occurred in order to determine whether the accident arose out of and in the course of the employment.

Porter, the laborer mentioned in the beginning of this opinion as the one who struck the blow, found it necessary to leave his work for a while. Plaintiff thought that Porter had absented himself for too long a period, and upon his return so informed him. Porter replied, "Well if I can't go out when I am on a job, I will get off the job." Plaintiff replied, "Well, you do as I tell you, or you will get off the job," and Porter answered, "Well, give me my time, and I will get off the job." Plaintiff then replied that he would give him his time, and went to a desk in an adjoining warehouse and wrote an order for it. On his return he saw Porter at a place where the laborers usually hung their coats, putting his on. He laid the order on a barrel near Porter, and turned to go away, when he heard Porter say in an impertinent manner, to quote the evidence, that "he wasn't gone no half hour," and then plaintiff replied, "You lie; get out of here." Plaintiff testified that Porter then advanced toward him in an angry mood, and, feeling sure that Porter intended to strike him, he grabbed a broom which was lying on a barrel, and as he raised it to strike they clashed. Plaintiff concedes that he hit Porter on the head with the broom, and it is an undisputed fact that Porter struck plaintiff over the left eye with his naked fist, which knocked him down. According to plaintiff's version, each struck the other about the same time. Of the laborers present, two witnessed the difficulty, though their evidence is not very full. One testified for plaintiff, the other for defendant. The former failed to observe the blow that plaintiff struck Porter. This, however, is doubtless attributable to the fact, as appears from the evidence of this witness, that he was engaged in his work at the time, and hence we infer that his attention was not specially attracted until he heard the blow that plaintiff concedes he struck. The other, who was defendant's witness, after testifying in a general way concerning the words uttered by the two in relation to the discharge, stated that he was sweeping, and plaintiff grabbed the broom from his hands during the quarrel and struck the blow, breaking the broom to pieces, and that Porter then struck plaintiff, knocking him down.

Plaintiff denied in rebuttal that he got the broom from this witness, and stated that he did not even observe his presence.

From the foregoing we conclude that when Porter contradicted plaintiff this angered him; that when plaintiff told Porter he was lying, and to leave, the remark angered Porter, if he were not already angry, and that he then made some movement which plaintiff considered a threatening advance, which caused him to grab the broom and strike Porter, when the latter immediately struck the blow which caused the injury.

When a foreman, in the performance of his duty, is assaulted by a laborer under him, and is injured as a consequence, the injury is considered as caused by an accident within the meaning of Employers' Liability Acts of the same general nature as ours. McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, and annotations thereto; Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 Pac. 398; Cranny's Case, 232 Mass. 149, 122 N. E. 266, 15 A. L. R. 584. We think the above rule is applicable under our statute, and ours was interpreted accordingly

in a dictum in Nash v. Longville Lumber Co., 148 La. 943, 88 South. 226.

The above rule also applies if, as in this case, the foreman is assaulted and injured immediately after the discharge when the assault is caused by the discharge, and when the foreman, as in this case, pursuant to his duty, is in the act of settling with the laborer.

It is, however, urged that, because plaintiff told Porter that he was lying, and struck him with a broom, the accident did not arise out of and in the course of the employment. We. however, think that it did. In Madden's Case, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000, and which is quoted approvingly in Cranny's Case cited supra, it is said:

"The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency, or there can be no recovery."

Adopting the above as a correct statement of the law in this state, we are of the opinion that the proximate cause of the injury was the reprimand of Porter for remaining away too long, and his discharge, both of which were within the scope of plaintiff's employment and duty. These brought about the incidents that followed in quick succession, and the resulting injury.

It is true that plaintiff should not have made use of the improper remark he did. However, he was provoked to do so by the remark and impertinent manner of Porter. As to striking the latter with the broom, that, as stated, was due to his threatening advance.

While plaintiff was not without fault, yet the nature of his employment was such that one holding the position he did might be expected to lose his temper at times, and use words that he should not. After all, it is not a matter as to whether he contributed to the injury by his faulty manner, but whether the accident that caused the injury arose out of the employment, and in the course of it.

[3] Defendant also urges that plaintiff's

151 La.—3

disability to do work of any reasonable nature is not total, but only partial. Under section 8 of Act 38 of 1918 the loss of both eyes is classified as total disability, and properly so. Where one loses his only eye, and it does not appear that he is able to do remunerative work of any reasonable character, the disability will be considered total, and he will be awarded compensation as for permanent total disability. Brooks v. Peerless Oil Co., 146 La. 383, 83 South. 663. The little that plaintiff has learned to do since the loss of his eyesight does not impress us as substantial, but rather as an effort on his part to do something, assisted by his family and the charity of his friends.

Finding no error in the judgment appealed from, it is affirmed at appellant's costs.

On Application for Rehearing.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

PER CURIAM. On the original hearing the court overlooked the fact that the compensation allowed by the judgment appealed from exceeded the maximum of $16 a week allowed by section 8 of Act 38 of 1918. The judgment is therefore amended by reducing the compensation allowed to $16 a week, and as so amended it is affirmed and reinstated, and made the final judgment. The rehearing applied for is denied.