No. 2255.

Second Circuit Appeal

JOHN F. JONES v. GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION ET AL.

(November 13, 1924, Opinion and Decree.)

(Syllabus by the Editor.)

1. Louisiana Digest—Master and Servant —Par. 160 (g).

Where an employee's ear is injured and an infection sets in making it necessary to remove a portion of the ear at a later date, prescription, under Section 31 of Act No. 20 of 1914, the Employers' Liability Act, does not begin until the removal of a portion of the ear.

2. Louisiana Digest—Master and Servant —Par. 159 (a).

Where an ear of an employee is injured by a particle of brass and remains in such a condition that part of it has to be amputated, the employee can recover under Section 8, Subsection 1 (e), of Act 20 of 1914, as amended by Act 247 of 1920.

(Note: The recent amendment is Act 216 of 1924. Editor's note.)

Appeal from the First District Court, Parish of Caddo, Hon. J. H. Stephens, Judge.

This is a suit to recover compensation under Act 20 of 1914, the Employers' Liability Act.

Judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

Herndon & Herndon of Shreveport, attorneys for plaintiff and appellee.

Harry Sellers, attorney for defendants and appellants. General Accident Fire and Life Assurance Corporation Et Al. & Wheeless Auto Supply Company.

ODOM, J. Plaintiff was employed by the Wheeless Auto Supply Co., Inc., in the capacity as Manager, and on the 23rd day of February, 1922, while acting in the course of his employment, a small brass chip or sliver flew off of a bushing which was being made by another employee of said company and hit him on the upper lobe of the left ear. He at once removed this small particle of brass which had lodged in his ear, and apparently thought but little about it until some five or six days, when the ear became sore and he consulted a physician, who administered some treatment. The ear did not heal and after several successive treatments the physician advised him to consult a skin specialist, which he did. The specialist administered radium treatment, which failed to relieve the soreness and inflamation.

He was then advised to consult a surgeon. As a last resort the surgeon amputated a portion of the upper lobe of the left ear.

Plaintiff was earning at the time of the accident $200.00 per month. He brings this suit under Sec 8, Sub. Sec. (E) of Act 247 of 1920, and asks that he be allowed compensation at $18.00 per week for 100 weeks, and for $75.00 for medical attention.

Before issue joined, defendant filed exceptions of misjoinder, non-joinder, and no cause of action and a plea of prescription, all of which were overruled, and upon trial there was judgment for plaintiff for $75.00 doctor's bill and for $18.00 per week for 20 weeks, with interest and costs. From this judgment the defendant appealed: Plaintiff answered the appeal, asking that the amount of compensation be increased.

This case was submitted on brief, and as the exceptions of no cause and no right of action and of misjoinder are not men-tioned therein, we must assume that they have been abandoned.

On the plea of prescription:

It was on February 23, 1922, that the chip or sliver of brass from a bushing hit plaintiff's ear. This suit was not filed until he 15th day of February, 1924, more than one year thereafter, and defendants contend that his claim is barred under that provision of the employer's liability act which provides that "all claims for payment shall be forever barred unless within one year after the injury proceedings have been begun, as provided in Secs. 17 and 18 of this Act". See Sec. 31 Act 20 of 1914.

We do not think the plea of prescription is good. It is true that no action was brought and no settlement made within one year from the time his ear was injured originally, but plaintiff is not suing to recover for the injury done his ear by the chip or sliver which hit his ear on Feby. 23, 1922. His suit is to recover under Subsection (e) of Section 8 of Act 247 of 1920, which provides that "where the employee is seriously permanently disfigured about face or head the court may allow such compensation as is reasonable," etc. He alleges and his testimony shows that a surgeon removed a portion of his left ear on June 17, 1923, "truly seriously, permanently disfiguring petitioner about the face and head". Petitioner's cause of action, therefore, arose not on Feby. 23, 1922, when the sliver struck his ear, but on June 17, 1923, when a portion of his ear was removed. This was less than one year previous to the filing of the suit.

The case of Guderion vs. Sterling Sugar and Ry. Co., 151 La., page 59, 91 South. 546, we think, supports our conclusions on this point. There the plaintiff was struck over the eye by a fellow employee. The court

found that the blow injured his optic nerve, which resulted in the loss of that eye. The court said:

"Plaintiff's cause of action did not arise until the loss of the eye. It is self-evident that one can not sue until his cause of action arises."

See cases cited in that opinion. In the case at bar plaintiff's ear was injured on Feby. 23, 1922. This injury resulted, finally in the loss of a portion of the ear, which disfigured him. He sued to recover not for the injury to his ear but for the disfigurement caused by the loss of a portion of it. His cause of action arose, therefore, not on the date of the injury, but on the date of the loss of a portion of his ear.

## ON THE MERITS.

The testimony satisfies us that the injury to the ear caused by the chip or sliver of brass flying from the bushing and striking plaintiff's ear caused an injury which finally resulted in the loss of a portion of the ear. The ear soon after the injury became sore and irritated. The physicians could not relieve the soreness and irritation. It was sore continuously from just a few days after the wound until that portion of the ear was amputated. As soon as the part of the ear which was struck by the brass particle was removed, the remaining portion of the ear healed. That suggests to us that there was a small particle of brass or some other substance, not detected by the physicians, which remained in the cartelege of the ear, which kept it irritated, or that the ear was in some way poisoned, due to the accident. This made the amputation of that part of the ear necessary. If this did not cause the irritation and soreness, what did? It is not shown that plaintiff had any cancerous or syphatic infection, or skin disease of any character. The physicians were of the opinion that the trouble was brought about by the wound.

As to the amount of compensation under Subsec. 1 (e), Sec. 8, Act 247 of 1920, the court may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in the case of specific disabilities above named, not to exceed 60 per centum of wages during one hundred weeks."

The judgment of the lower court allowed plaintiff $18.00 per week for 20 weeks. In allowing compensation for only 20 weeks the judge of the lower court overlooked the above quoted provisions of the act to the effect that there should be compensation "during 100 weeks". Under that provision of the statute the court has no discretion as to the length of time over or during which compensation shall be allowed, its discretion being limited to the fixing of the per centum of the weekly wages to be allowed, provided the same does not exceed 60 per centum thereof. See Garr vs. Wyatt Lbr. Co., 147 La. 689, 85 South. 640, et seq.

The Judge of the court below saw and, of course, observed the plaintiff, and for that reason was in better position to fix the quantum of damages than we are and, while under the plain provision of the statute and the decisions of the Supreme Court, we must amend the judgment, we are disposed to allow the amount allowed by him to remain substantially as he fixed it, and have allowed plaintiff $4.00 per week during a period of 100 weeks.

For the reasons assigned, it is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended so as to allow compensation to the plaintiff in the sum of $4.00 per week during a period of 100 weeks, and as this is amended, the

judgment is affirmd, all costs to be paid by defendant.